[Cite as *In re L.S.*, 2023-Ohio-4321.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE L.S.                                       :

                                                 :          No. 112698

A Minor Child                                    :

[Appeal by Former Foster Parents]                :

                                                 :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 30, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-19-901719

---

### *Appearances:*

Christina M. Joliat, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

MICHAEL JOHN RYAN, J.:

{¶ 1} The former foster parents (collectively "appellants") of the child at issue in this appeal, L.S., appeal from the juvenile court's April 21, 2023 judgment overruling their objections to a magistrate's decision and affirming, approving, and

adopting the decision. The magistrate's decision was issued on April 7, 2023, and denied appellants' amended motion for legal custody and immediate visitation. Appellants also appeal from the court's April 24, 2023 judgment overruling their objections to the magistrate's recommendation, also contained in the April 7, 2023 decision, that appellants' motion for referral to the diagnostic clinic and for emergency visitation be denied; the court affirmed, approved, and adopted the magistrate's recommendation. After a thorough review of the facts and pertinent law, we affirm.

**Factual and Procedural History**

{¶ 2} This case began in 2019, when the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") filed a complaint alleging that L.S. was dependent and requesting an order of temporary custody to CCDCFS. L.S. was a newborn infant at the time. The child was later adjudicated to be dependent and was placed in the agency's temporary custody. In 2020, L.S.'s parents' rights were terminated, and the child was placed in the permanent custody of CCDCFS. The record indicates that since L.S.'s birth the child has been placed with numerous different care providers, including appellants.

{¶ 3} The child was removed from appellants' care in August 2022, and on August 29, 2022, the agency filed an amended case plan based on an "emergency placement change due to physical abuse allegations reported and current investigation." In September 2022, appellants filed a motion to intervene and a motion for "immediate placement and to resume adoption process." The trial court

held hearings on December 12 and 13, 2023. The agency initially opposed appellants' motion to intervene, filing a brief in opposition, but later orally withdrew its opposition at the December 12 hearing that was held on appellants' motion for immediate placement and to resume adoption process. In withdrawing its opposition, CCDCFS specifically stated that it was withdrawing its opposition only as to the hearing on the placement motion in an effort to expedite permanency for L.S. Specifically, the agency stated that it was withdrawing its opposition "with regard to *this particular motion.* We believe that permanency for [the child] should be expedited and certainly our doing a [hearing on the] Motion to Intervene isn't in [the child's] best interest at this point, so we are willing to concede that [appellants] *can be parties for purposes of this hearing.*" (Emphasis added.) Tr. 5. The agency maintained that regardless of appellants' party status, the trial court lacked authority to order immediate placement or resumption of adoption proceedings.

{¶ 4} The following witnesses testified at the December 2022 hearings: (1) L.S.'s therapist, (2) appellants, (3) two character witnesses for appellants, (4) agency supervisor Wendy Horn, (5) agency case worker Andrea Flynn, and (6) agency permanency support worker Noreen Thomas. L.S.'s guardian ad litem ("GAL") filed a report and recommendation ahead of the hearing and stated her recommendation on the record; the parties were allowed to cross-examine her.

{¶ 5} L.S.'s therapist testified that she had had concerning interactions with appellant former foster mother. Specifically, former foster mother would describe L.S. as "evil," "manipulative," and "bad" in the presence of the child. The therapist

also testified that appellants failed to consistently utilize the recommended strategies for dealing with the child's behaviors and, therefore, she had concerns for L.S. if the child were to be returned to appellants' home.

{¶ 6} Appellants testified that they love L.S. and they believe that they were unfairly treated by CCDCFS and the agency wrongfully removed the child from their home. Appellants' character witnesses testified that their own children were cared for by appellant former foster mother; the witnesses were complimentary of her.

{¶ 7} CCDCFS supervisor Horn testified about the professionalism of case worker Flynn during the six years she had supervised her. Horn also testified that appellants consistently negatively portrayed L.S. She explained the agency's extensive efforts to remedy the situation in order to preserve the placement. According to Horn, appellants were unwilling to document their claims regarding the child's extreme behaviors and were unwilling to participate in services to try to improve the bond between appellant former foster mother and L.S. Horn further testified regarding the ultimate decision to remove the child from her placement with appellants. She explained how difficult it was in light of all of the multiple placements L.S. had been through. She testified, however, that it was her belief that removing L.S. from appellants was in the child's best interest.

{¶ 8} Thomas, a CCDCFS permanency support worker, testified that in February 2022, appellants asked to put L.S.'s adoption on hold because of their concerns over the child's behaviors. According to Thomas, appellant former foster mother disagreed with the therapist's characterization of the child's behaviors as

"typical toddler behaviors." Thomas further testified that appellants refused to engage in services to improve their handling of the child's needs. Thomas corroborated Horn's testimony regarding Flynn's professionalism in working with appellants. Thomas believed that L.S. should not be returned to appellants' care.

{¶ 9} Agency case worker Flynn testified that appellant former foster mother repeatedly referred to L.S. as "bad" and as "having the devil in her." Appellants wanted to pursue additional services for the child, but Flynn believed the services they wanted to pursue were not age appropriate for a three-year old. Flynn also testified about clashes appellant foster mother had with L.S.'s therapist and the appellants' unwillingness to engage in recommended services.

{¶ 10} L.S.'s GAL stated her recommendation that appellants' request to have L.S. placed in their home should be denied.

{¶ 11} On January 13, 2023, the magistrate issued a decision recommending that appellants' motion for immediate placement and to resume adoption process be denied. Appellants filed objections to the magistrate's decision and CCDCFS filed a motion to strike and brief in opposition to appellants' objections.

{¶ 12} On February 27, 2023, appellants filed a motion for legal custody and immediate visitation. CCDCFS filed a brief in opposition to this motion on March 9, 2023. The appellants amended their motion in an April 2, 2023 filing. Appellants also filed a motion for diagnostic clinic evaluation on March 7, 2023; CCDCFS filed a motion to dismiss and brief in opposition to the motion for diagnostic evaluation.

{¶ 13} Two pertinent decisions were filed by the trial court on April 7, 2023. In one, the trial court overruled appellants' objections and affirmed, approved, and adopted the magistrate's decision, thus denying appellants' motion for immediate placement and to resume adoption process. In that same judgment, the trial court stated that the "parties stipulated to motion to intervene. CCDCFS withdrew its opposition. The Court, upon due consideration, grants the Motion to Intervene." In the other April 7 filing, the magistrate issued a decision recommending that appellants' motion for diagnostic clinic evaluation be denied.

{¶ 14} On April 16, 2023, appellants filed objections to the magistrate's April 7 decision recommending denial of their motion for a diagnostic clinic evaluation. The trial court overruled the objections on April 21, 2023. In that same April 21 judgment, the trial court denied appellants' amended motion for legal custody and immediate visitation. Further, in an April 24, 2023 judgment, the trial court denied appellants' motion for diagnostic clinic evaluation.

{¶ 15} Appellants filed their notice of appeal on May 1, 2023. Their notice states that they are appealing the judgments denying their amended motion for legal custody and immediate visitation and their motion for diagnostic clinic evaluation. Appellants present two assignments of error for our review:

I.   Intervenor's [sic] are case parties since their motion to intervene was granted by the trial court.

II.  The trial court is able to order a change in the placement of a child in the permanent custody of the agency and was in error denying the motion for legal custody and immediate [visitation] without further hearing.

**Law and Analysis**

{¶ 16} We initially address CCDCFS's contention that appellants failed to present us with certified transcript of proceedings in accordance with App.R. 9(B)(6)(j), which provides in relevant part that "[t]he transcriber shall certify the transcript of proceedings as correct." Appellants counter with the following: "The certified transcript was e-filed with the Cuyahoga County Juvenile Court for objections purposes and incorporated as part of the record. Counsel spoke with appellate clerk staff regarding e-filing and certification. No further requests were made of counsel regarding said transcript."

{¶ 17} The record demonstrates that appellants have provided this court with two copies of the transcripts — a paper version and an e-filed version. Neither version is compliant with the Rules of Appellate Procedure. The paper version is not bound as required under App.R. 9(B)(6)(b), and it is not signed by the transcriber as required under App.R. 9(B)(6)(j). The e-filed version is not signed and therefore it is not compliant with App.R. 9(B)(6)(b).

{¶ 18} However, this court did not sua sponte strike the transcripts when they were filed: CCDCFS has neither requested same nor argued that we merely presume the regularity of the proceedings. Indeed, the agency has largely relied on the transcripts in their brief in opposition. "Fairness and justice are best served when a court disposes of a case on the merits." *DeHart v. Aetna Life Ins. Co.*, 69 Ohio St.2d 189, 193, 431 N.E.2d 644 (1982). Therefore, we will consider the transcripts.

{¶ 19} In another preliminary matter, as noted by the agency, appellants have appealed from two judgments: (1) the April 21, 2023 judgment that overruled appellants' objections to the April 7, 2023 magistrate's decision recommending denial of their motion for diagnostic clinic evaluation and denied appellants' amended motion for legal custody and immediate visitation, and (2) the April 24, 2023 judgment that formally denied appellants' motion for diagnostic clinic evaluation (the April 21 judgment overruled the appellants' objection but did not explicitly state that their motion was denied). Appellants' notice of appeal does not state that they are appealing the trial court's April 7, 2023 judgment overruling appellants' objections to the magistrate's decision that appellants' motion for immediate placement and motion to resume the adoption process be denied. Despite their failure to identify that judgment in their notice of appeal, appellants challenge it in this appeal.

{¶ 20} "The Ohio Rules of Appellate Procedure specify the means for perfecting an appeal from an adverse judgment." *Bank of Am., N.A. v. Robledo*, 10th Dist. Franklin No. 13AP-278, 2014-Ohio-1185, ¶ 11. App.R. 3(A) provides that "[a]n appeal as of right shall be taken by filing a notice of appeal with the clerk of the trial court within the time allowed by Rule 4." App.R. 4(A) requires a party to file a notice of appeal "within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three-day period in Rule 58(B) of the Ohio Rules of Civil Procedure." The timely filing of a notice of appeal is the only jurisdictional

requirement for perfecting a valid appeal. *Id.* at ¶ 12, citing *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320, 649 N.E.2d 1229 (1995), syllabus.

{¶ 21} Here, the appellants timely filed their notice of appeal. Thus, they have perfected the only jurisdictional requirement for perfecting a valid appeal and, in the interest of justice, we will consider their contention regarding the trial court's April 7, 2023 judgment overruling appellants' objections to the magistrate's decision that appellants' motion for immediate placement and motion to resume the adoption process be denied.

{¶ 22} Having addressed the above-mentioned preliminary issues, we turn to appellants' first assignment of error. The assignment of error does not present any alleged error for us to review in violation of App.R. 16(A). Rather, it is merely appellants' contention that they "are case parties since their motion to intervene was granted by the trial court." Pursuant to App.R. 12(A)(2), an appellate court may disregard any assignment of error, or portion thereof, if the appellant fails to make a separate argument. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55. Notwithstanding appellants' failure to comply with the appellate rules, we address their contention and disagree with it.

{¶ 23} The trial court stated the following in its April 7, 2023 judgment relative to appellants' motion to intervene: "Parties stipulated to the motion to intervene. CCDCFS withdrew its opposition. The Court, upon due consideration, grants the Motion to Intervene." Although at first blush it may appear that the trial court made appellants parties to the case without limitation, a deeper examination

of the record does not support this. Specifically at the start of the December 12, 2022 hearing, the trial court questioned CCDCFS's attorney about appellants' motion to intervene, to which the attorney responded:

> Your Honor, we filed a Brief in Opposition. We withdrew that Brief in Opposition with regard to *this particular motion*. We believe that permanency for [the child] should be expedited and certainly our doing a Motion to Intervene isn't in her best interest at this point, so we are willing to concede that *[appellants] can be parties for purposes of this hearing*.

(Emphasis added.) Tr. 5.

{¶ 24} It was after hearing that statement that the trial court allowed appellants to intervene. It was not a carte blanche intervention; rather, it was for the limited purpose of the December 2022 hearing.

{¶ 25} Appellants cite two cases in their "assignment of error": (1) *In re Ring*, 10th Dist. Franklin No. 93 APF12-1693, 1994 Ohio App. LEXIS 2841 (June 28, 1994), and (2) *In re Baatz*, 9th Dist. Lorain Nos. 92CA005478 and 92CA005479, 1993 Ohio App. LEXIS 3996 (Aug. 11, 1993). Interestingly, both of those cases held that foster parents are not automatically guaranteed party status in custody determinations and affirmed the trial courts' denial of the foster parents' motions to intervene. *See In re Ring* at 9-13; *In re Baatz* at 2-9. According to appellants, despite the fact that "Ohio court have consistently held that foster care relationship is not one that gives rise to a claim of 'in loco parentis' for purposes of intervention[,] * * * in the case at bar the court proceeded with the case and stated

that the Motion to Intervene was granted." Appellants' brief, p. 19. For the reasons stated, this is not accurate description of what occurred.

{¶ 26} Further, although a foster parent is not automatically entitled to party status, Juv.R. 2(Y) gives the trial court "wide discretion to name parties to a juvenile court action, and this discretion includes naming foster parents as parties." *In the Matter of: Rhonda Zhang*, 135 Ohio App.3d 350, 357, 734 N.E.2d 379 (8th Dist.1999). *See also In re: McDaniel*, 11th Dist. Lake Nos. 2002-L-158 and 2002-L-159, 2004-Ohio-2595, ¶ 16. The rule "affords a procedural device permitting a trial court to include individuals not specifically otherwise designated a party but whose presence is necessary to fully litigate an issue presented in the action." *In re Franklin*, 88 Ohio App.3d 277, 280, 623 N.E.2d 720 (3d Dist.1993). Thus, "the court may protect and adjudicate all legitimate claims, protect all interests appearing, avoid multiple litigation and conserve judicial time in the orderly administration of justice." *Id.* In deciding a motion to intervene in a juvenile case, the court must look to whether intervention is in the best interest of the child. *In re: B.O.*, 11th Dist. Lake No. 2011-L-055, 2011-Ohio-6210, ¶ 40-41.

{¶ 27} Because the trial court granted the appellants' motion in accordance with CCDCFS's concession — that they be allowed to intervene for the limited purpose of the December 2022 hearings — the trial court did not hold a hearing to determine whether allowing appellants full-party status would be in L.S.'s best interest. Further, appellants did not contest the agency's statement at the December

2022 hearing that it was conceding intervention for the limited purpose of that hearing.

{¶ 28} In light of the above, the first assignment of error is overruled.

{¶ 29} In their second assignment of error, appellants contend that the juvenile court was able to order a change in L.S.'s placement and it was error to deny their motion for legal custody without further hearing.

{¶ 30} In its April 7, 2023 judgment overruling appellants' objections to the magistrate's January 13, 2023 decision the trial court stated the following:

> The Court agrees with the argument of CCDCFS [that] while ORC 2151.417(A) does give the court the ability to review a child's placement, it does not give the court the authority to order a specific placement. The [appellants] are requesting the Court to make orders for a specific placement with them and to order CCDCFS to resume the adoption process with them that this Court is not legally able to make. The Court further notes that the final determination in adoption falls[s] within the jurisdiction of the Probate Court.

April 7, 2023 judgment, record at 598.

{¶ 31} The procedural posture of the case at the time appellants filed their motion for legal custody is relevant to the resolution of this issue. Specifically, appellants filed their motion in September 2022. At that time, L.S. was in the permanent custody of CCDCFS because the biological parents' rights had been terminated in September 2020. "[L]egal custody and permanent custody are alternative disposition choices." *In re Fell*, 5th Dist. Guernsey No. 2004-CA-39, 2005-Ohio-2415, ¶ 17. The juvenile court already chose the disposition of permanent custody to CCDCFS.

**{¶ 32}** Intertwined in this assignment of error is appellants' party status in the juvenile court at the time of their motion for legal custody. Predisposition award of legal custody of a child can be made "to either parent or to *any other person* who * * * files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." (Emphasis added.) R.C. 2151.353(A)(3). The statute does not require a nonparent filing for legal custody prior to disposition to be a party.

**{¶ 33}** However, the law limits the filing of post-disposition motions, as relative to this case, to parties. Specifically, R.C. 2151.353(F)(2) provides as follows:

> Any public children services agency, any private child placing agency, the department of job and family services, *or any party*, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section or section 2151.414 or 2151.415 of the Revised Code. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42 of the Revised Code.

(Emphasis added.) R.C. 2151.353(F)(2).

**{¶ 34}** The earliest appellants were parties, if at all, was April 7, 2023, when the trial court issued its judgment stating that their motion to intervene was granted. *See State ex rel. Indus. Comm. v. Day*, 136 Ohio St. 477, 479, 26 N.E.2d 1014 (1940). ("[O]ne of the most important fundamentals of the law [is] that a court of record speaks through its journal."). Thus, at the time appellants filed their post-

disposition motion for legal custody in February 2023, it was not properly before the court under R.C. 2151.353(F)(2).

{¶ 35} In regard to CCDCFS's contention that the juvenile court could not have ordered appellants' adoption of L.S. to resume, *see* appellee brief, p. 14, although the agency is correct that, in Ohio, adoption matters are within the exclusive jurisdiction of probate court,[1] the juvenile court could have ordered the agency to proceed with appellants' adoption of L.S. if it found that to be in the child's best interest. Specifically, R.C. 2151.417 gives the juvenile court the ability to weigh in on the pre-probate court adoption process. The statute provides as follows:

> Any court that issues a dispositional order pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code may review at any time the child's placement or custody arrangement, the case plan prepared for the child pursuant to section 2151.412 of the Revised Code, the actions of the public children services agency or private child placing agency in implementing that case plan, the child's permanency plan if the child's permanency plan has been approved, and any other aspects of the child's placement or custody arrangement. In conducting the review, *the court shall determine the appropriateness of any agency actions, the safety and appropriateness of continuing the child's placement or custody arrangement, and whether any changes should be made with respect to the child's permanency plan or placement or custody arrangement or with respect to the actions of the agency under the child's placement or custody arrangement.* Based upon the evidence presented at a hearing held after notice to all parties and the guardian ad litem of the child, *the court may require the agency, the parents, guardian, or custodian of the child, and the physical custodians of the child to take any reasonable action that the court determines is necessary and in the best interest of the child* or to discontinue any action that it determines is not in the best interest of the child.

(Emphasis added.) R.C. 2151.417(A).

---

[1] *See In re Ridenour*, 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991).

{¶ 36} Here, the juvenile court specifically found that "there is ample evidence in the transcript to support the Magistrate's Decision [that the agency should not be ordered to resume appellants' desire to adopt L.S.], the actions of CCDCFS, and the recommendation of the child's GAL." The record supports the court's finding. The child's therapist, an agency supervisor, an agency permanency support worker, and an agency case worker all testified about concerning interactions they had had with former foster mother vis-à-vis the child and appellants' unwillingness to engage in recommended services. Additionally, L.S.'s GAL believed it was in the child's best interest not to be placed with appellants.

{¶ 37} Finally, appellants also contend in this second assignment of error that the "trial court should have ordered the requested diagnostic clinic evaluation." Again, the appellants have not provided argument to support their contention — a violation of App.R. 12(A)(2). Our response is simple: by approximately age three, L.S. had been in numerous different placements, none of which were with her biological parents. The child deserves permanency; further litigation surrounding placement with appellants would only serve to delay permanency.

{¶ 38} The second assignment of error is overruled.

{¶ 39} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LISA B. FORBES, J., CONCUR