[Cite as *In re C. B-W*, 2017-Ohio-8901.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

    C. B-W.

    (D.O.B. 3-24-15)

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. CT2017-0025

O P I N I O N

CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 21530041

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     December 7, 2017

APPEARANCES:

For Appellees Dodge

SCOTT RANKIN
45 North 4th Street
Zanesville, Ohio  43701

For MCCS

TRAFFORD DICK
27 North 5th Street, P. O. Box 189
Zanesville, Ohio  43701

For Appellant Mother

VALERIE WIGGINS
WIGGINS LAW OFFICE
107 South Main Street
New Lexington, Ohio  43764

Guardian Ad Litem

BARBARA CAFFARATTI
45 North 4th Street, P.O. Box 124
Zanesville, Ohio  43701

*Wise, J.*

{¶1}    Appellant-Mother J.M. appeals the judgment of the Muskingum County Common Pleas Court, Juvenile Division, awarding legal custody of her minor daughter C.B-W. to Appellees.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2}    On March 26, 2015, Muskingum County Children Services (MCCS) filed a Complaint in Muskingum County Juvenile Court alleging the minor child, C.B-W. (dob 3/24/15), was a Neglected (R.C. §2151.03(A)(2)) and a Dependent child (R.C. §2151.04(C)). MCCS became involved immediately after the child was born due to Appellant-Mother, J.M., being extremely disengaged with the child and failing to attend to her. Appellant-Mother left the hospital for approximately four (4) hours and then returned and demanded to be discharged or she would leave against medical advice. Although the Mother's drug test was negative, the child was having tremors. The hospital staff thought the Mother's behaviors at the hospital were inappropriate, and the hospital staff was concerned about the child's welfare if Mother took her home. The Mother had a history of extensive involvement with Muskingum County Children Services and delinquencies as a juvenile. The Mother also has a history of mental health issues, including bipolar disorder, depression and ADHD.

{¶3}    Ex-parte Orders were issued by the trial Court on March 26, 2015, and a hearing was held on March 27, 2015, where the child was placed in the temporary custody of MCCS.

{¶4}    On or about March 27, 2015, upon the child's release from the hospital, she was immediately placed with Appellee foster parents.

{¶5}   On April 24, 2015, MCCS filed with the trial Court a comprehensive Assessment and Case Plan. Therein, the Mother and Father of the child were identified to have significant income concerns, which significantly and adversely affected their ability to properly parent the child and provide the child with a safe and sober home. No party objected to any component of the case plan, and the same was approved and adopted by the Court.

{¶6}   Muskingum County Children Services explored possible placement with other family members and kinship placements. A home study was conducted on the Mother's former step-mother. That home study was denied and filed with the Muskingum County Juvenile Court on 5/28/2015.

{¶7}   Another home study was conducted on the Mother's friend, C.L. That home study was denied and filed with the Muskingum County Juvenile Court on 12/2/2015.

{¶8}   A home study was requested on the paternal grandfather on 12/9/2015, but he withdrew himself from the home study process and consideration at the end of January 2016.

{¶9}   On June 10, 2015, the child was adjudicated, neglected and dependent at the Adjudicatory hearing and temporary custody was continued with Muskingum County Children Services. MCCS continued the placement of the minor child with Appellee foster parents.

{¶10}  On or about June 19, 2015, MCCS contacted the paternal grandmother who lived in North Carolina to see if she was interested in pursuing custody of the minor child. (12/6/16 T. at 33-34). She indicated she was interested but needed to speak with her

husband first. (T. at 34). On June 24, 2015, MCCS requested a home study on the paternal grandmother. (T. at 34).

**{¶11}** On July 1, 2015, the grandmother contacted the agency indicating she was not ready to start the home study and wanted to wait until mid-August. (T. at 34). Eventually the Interstate Compact on the Placement of Children (ICPC) home study on the grandmother was approved and filed with the Court on February 24, 2016.

**{¶12}** On February 24, 2016, Appellee foster parents, who had been raising the minor child for eleven months, filed a motion for an ex-parte order to prohibit MCCS from removing or placing the child out of state without a prior court hearing. The trial court granted that request preventing the removal of the minor child out of state without a prior court order.

**{¶13}** On April 13, 2016, the assistant prosecuting attorney filed a motion on behalf of Muskingum County Children Services, requesting that legal custody be granted to the paternal grandmother.

**{¶14}** The Mother's attorney filed a motion requesting that the Mother be transported from prison to the final hearing in this matter. This motion was denied by the trial court. The Court found no particular grounds set forth in the motion wherein the Mother's testimony and/or participation in the hearing would be of significance as opposed to the reasons set forth in the memorandum in opposition. Further, the Court noted that Mother would remain incarcerated on her felony convictions until February 1, 2017, and that the Mother had failed to make any substantial progress on her case plan towards reunification.

{¶15} On September 1, 2016, a hearing commenced on the Motion for Legal Custody to the grandmother and on the oral request by MCCS to lift restriction of removing the child from the State of Ohio. After some testimony, the trial court issued an interim order in which the grandmother was granted weekend visitation at the discretion of MCCS. It was further ordered that MCCS was prohibited from placing the child outside of the State of Ohio, and the MCCS motion for legal custody to the grandmother was continued.

{¶16} On September 7, 2016, after the hearing, the foster parents were permitted to join as parties to this case.

{¶17} On October 12, 2016, the foster parents filed a motion requesting legal custody of the minor child.

{¶18} On December 6, 2016, a hearing was held on all pending motions, and the minor child was placed in the Legal Custody of the foster parents.

{¶19} Appellant-Mother now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

{¶20} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED A NON-PARTIES [SIC] MOTION TO PREVENT REMOVAL THEREBY THWARTING THE AGENCY'S EFFORTS TO REUNIFY THE CHILD WITH RELATIVES.

{¶21} "II. THE TRIAL COURT'S DECISION TO GRANT LEGAL CUSTODY TO THE FOSTER PARENTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶22} "III. THE TRIAL COURT COMMITTED PLAIN ERROR IN ALLOWING AND THEN RELYING ON EXPERT TESTIMONY GIVEN BY A LAY WITNESS.

**{¶23}** "IV. COUNSEL FOR THE MOTHER WAS INAFFECTIVE [SIC]."

**I.**

**{¶24}** Appellant-Mother argues that the trial court erred in granting the foster parents' motion to prevent removal of the minor child. We disagree.

**{¶25}** More specifically, Appellant argues that the trial court erred in considering the motion of the foster parents because they were not a party at the time of the filing of the motion in February, 2016.

**{¶26}** We initially note that Juv.R. 2(X) provides:

'Party' means a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court.

**{¶27}** Although a foster parent is not automatically entitled to party status, Juv.R. 2(Y) gives the trial court "wide discretion to name parties to a juvenile court action, and this discretion includes naming foster parents as parties." *In the Matter of: Rhonda Zhang,* 135 Ohio App.3d 350, 357, 734 N.E.2d 379 (8th Dist.1999). *See also In re: McDaniel,* 11th Dist. Lake Nos. 2002–L–158 and 2002–L–159, 2004-Ohio-2595. The rule "affords a procedural device permitting a trial court to include individuals not specifically otherwise designated a party but whose presence is necessary to fully litigate an issue presented in the action." *In re Franklin,* 88 Ohio App.3d 277, 280, 623 N.E.2d 720 (3d Dist.1993). Thus, "the court may protect and adjudicate all legitimate claims, protect all interests

appearing, avoid multiple litigation and conserve judicial time in the orderly administration of justice." *Id.*

**{¶28}** In deciding a motion to intervene in a juvenile case, the court must look to whether intervention is in the best interest of the children. *In re: B.O.,* 11th Dist. Lake No. 2011–L–055, 2011-Ohio-6210. The best interest of the child is the primary consideration when the disposition of a child is to be determined. *In re Cunningham* (1979), 59 Ohio St.2d 100.

**{¶29}** A trial court's decision to grant or deny a motion to intervene in a juvenile case will not be overturned on appeal absent an abuse of discretion. *In re Ashley T,* Lucas App.No. L–02–1007, 2002–Ohio–2799, ¶ 22, citing *In the Matter of: Kei'Andre P., Qua'Von P., Keionn G., & Juanya G.* (Feb. 16, 2001), Lucas App. No. L–00–1203. An abuse of discretion connotes more than an error of law or judgment. It implies the court's attitude was unreasonable, arbitrary, or unconscionable.

**{¶30}** We recognize that "[the rights of foster parents respective to a child in their care are quite limited. Such persons care for a dependent or neglected child only as agents for the state, who is the child's permanent or temporary legal custodian, in most cases." *In re Palmer* (Apr. 12, 1983), Stark App. No. CA–6026; *In re: J.B.,* 8th Dist. Cuyahoga No. 96652, 2011-Ohio-4830.Consequently, foster parents have no automatic right to participate as parties in the adjudication of rights of natural parents and their children. *Id.* Nevertheless, as is apparent from both Juv.R. 2(Y) and Civ.R. 24(B), the trial court may order a child's foster parents to be joined as a party in appropriate cases. Additionally, foster parents are afforded the right to notice.

**{¶31}** In this case, although the trial court did not make the foster parents parties to this action until September, 2016, we find that the trial court did not abuse its discretion in considering the foster parents' motion to prevent removal of the child without first holding a hearing or in later granting the foster parents' motion to intervene.

**{¶32}** Upon review, we find that the record demonstrates that the trial court considered whether removal of the child and/or placement of the child outside of the State of Ohio without first holding a hearing would be in the best interest of the child and decided that it would not. The child in this case had been placed in the care of the foster parents for the entire 11 months of her life. Further, the child's parents and siblings all live in Ohio.

**{¶33}** Based on the foregoing, we do not find the trial court abused its discretion in granting the motion to prevent the removal of the child from the state of Ohio without a prior court hearing.

**{¶34}** The First Assignment of Error is overruled.

**II.**

**{¶35}** In her Second Assignment of Error, Appellant-Mother argues that the trial court's decision to grant legal custody of the minor child to the foster parent was against the manifest weight of the evidence. We disagree.

**{¶36}** Initially, we note "Legal custody" is "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all *subject to any residual parental rights,* privileges, and responsibilities." (Emphasis added.) R.C. §2151.011(B)(21). In turn, "residual parental rights, privileges, and responsibilities" is

defined to mean "those rights, privileges, and responsibilities remaining with the natural parent after the transfer of legal custody of the child, including, but not necessarily limited to, the privilege of reasonable visitation, *consent to adoption,* the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. §2151.011(B)(49).

**{¶37}** As recognized in *In re C.R.,* 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, "[t]he important distinction is that an award of legal custody of a child *does not* divest parents of their residual parental rights, privileges, and responsibilities." *Id.* at ¶17. Legal custody is "subject to" residual parental rights, R.C. §2151.011(B)(21), which include the parents' right to consent to an adoption, and the phrase "subject to" denotes "a contingent relation" that may be "conditioned, affected, or modified in some indicated way," *Webster's Third New International Dictionary* 2275 (1986). Thus, a third-party takes legal custody of a child *subject to* a parent's residual right to consent to an adoption, and the exercise of the right to consent to adoption necessarily affects a temporary legal custodian's right to determine the child's placement.

**{¶38}** Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The Ohio Supreme Court has also explained: "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co.*

*v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273. Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings [of the juvenile court]. * * * If the evidence is susceptible to more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, and most favorable to sustaining the [juvenile] court's verdict and judgment." *In re: MB,* Summit App. No. 21812, 2004–Ohio–2666, citing *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350.

**{¶39}** In the case *sub judice*, the trial court provided findings of fact and conclusions of law in support of its decision to grant the foster parents' legal custody motion. At the custody hearings, the trial court heard testimony from both of the foster parents; Ashley Labaki, the caseworker for the minor child and her family; the paternal grandmother who was also seeking legal custody; Barbara Caffaratti, the guardian ad litem; Kelsey Coe, the intervention supervisor at Muskingum County Adult and Child Protective Services; Candy Barr, a licensed social worker; and Carrie Metzger, a friend of the foster parents and fellow foster parent.

**{¶40}** Although Appellant-Mother is not arguing that the child should have been returned to her, the trial court did find that the Mother had a history with MCCS and with mental health issues including bi-polar disorder, depression and ADHD, along with substance abuse issues. (3/8/17 JE at 3). The trial court also found that the Mother did not complete any of her case plan objectives. (3/8/17 JE at 3) Further, the Court found that on May 20, 2016, the Mother was incarcerated at Dayton Correction Institution after being convicted of Assault and Harassment by an Inmate (both felony of the fifth degree), expected release date February 1, 2017. (3/8/17 JE at 3).

{¶41} The trial court also found that the child should not be placed in the Father's care and custody, because: (1) he never showed up for his first recommended substance abuse treatment appointment and was unsuccessfully discharged from treatment; (2) he failed to submit to any random drug screens; (3) he admitted to being drunk when there was a domestic violence incident between he and the child's mother; ( 4) he failed to attend mental health treatment; and (5) he failed to work or complete any of his case plan objectives with MCCS.

{¶42} Rather, Appellant-Mother argues that legal custody should have been granted to the paternal grandmother and not the foster parents.

{¶43} With regard to the paternal grandmother, the trial court heard testimony from the grandmother admitting that she knew of the birth of the baby on March 24, 2015, when her son called her when MCCS removed the child from the hospital in March, 2015. (T. I. at 42 -44). She admitted that she never visited with the child until April, 2016, when the child was approximately thirteen months old. (T. II at 143; JE at 4). The trial court found that the Grandmother could have visited with the child in Ohio, but never requested to do so until after the home study was completed and MCCS paid for her to fly to Ohio. (JE at 4). Further, the trial court found that after visitation was ordered, the grandmother had the opportunity to visit with the child twice per month, but elected to do so only once per month. (JE at 4-5). The court also found that she was 60 years old at the time of the hearing and would be in her mid-seventies when the child will be in her teenage years. Further, the court heard the grandmother's testimony as to her three grown sons who all have multiple felony convictions and substance abuse issues with drugs and/or alcohol, one of whom has been to prison more than once. (JE at 5; T. II. at 168).

**{¶44}**  In addition to the above, the trial court also took into consideration that the minor child has five half-siblings who live in Ohio, whereas the grandmother lived in North Carolina. (JE at 5). The trial court also found that the "Grandmother testified that she does not drink alcohol, however, her home study cited that she admitted to drinking wine for low iron issues which her doctor recommended." (JE at 5). Further, "Grandmother denied being in Ohio on Mother's Day 2016; however Grandmother did send a text message to the foster mother stating that she (Grandmother) was in Ohio (visiting her mother), but did not visit with or ask to visit with the child. (JE at 5).

**{¶45}**  In making its decision, the trial court considered the length of time that the child had lived with the foster parents as well as the grandmother's delay in coming forward to seek custody and visitation in the case, as well as the lack of contact that she had had with the child during the pendency of the case. (JE at 5). The trial court stated: "[d]espite Grandmother visiting with the child approximately ten (10) times between April 2016, and the date of the final hearing (December 6, 2016), Grandmother could have visited with the Child on several other occasions and did not take advantage of those opportunities." (T. II. at 103).  "[Foster mother] further testified that the Grandmother came to Ohio another time to attend a funeral and made no attempt to visit with the child." (JE at 5; T. II. at 106). "[Foster mother] further testified that the Grandmother ended a couple visits early, and specifically on one occasion grandmother left the visit early so she and her husband could eat and watch a basketball game prior to their scheduled flight back home." (T. II. at 106). Further, the court cited testimony of the foster mother that the Grandmother had never contacted her and attempted to visit with the child prior to MCCS

setting up visits. *See* (JE at 6; T. II at 103). The trial court included these items in its findings of fact.

**{¶46}** The trial court also made several findings regarding the length of time the minor child had lived with the foster parents and the degree of bonding that had developed over that time. The court found that the child was placed in the foster parent's home on March 27, 2015, three days after birth, where the child has remained since. (JE at 5). The court found that "[foster mother] testified that as of the December 6, 2016 hearing date, the child is twenty and a half (20 ½) months old, and that the child has bonded with her as a parent and they are extremely close." (JE at 5; T. II. at 102). The court also found that the child was also bonded with his foster father and the rest of the family. (JE at 5). Additionally, two Muskingum County Children Services' workers testified that they had visited the foster parents' home and they were bonded with the child as parents. "The [foster parents] have done wonderful providing for the child, and that [the foster parents] have always presented appropriate, loving and caring, and have provided for the child's basic and special needs since being placed in their care." (JE at 6).

**{¶47}** Based on all of the testimony, the trial court ultimately decided that it was in the best interests of the child to continue in care and custody of the foster parents and therefore, placed the child in the legal custody of the foster parents. Both of the child's biological parents were residents of the State of Ohio, and the placement with the foster parents made visitation with the parents and half siblings more feasible than placement in North Carolina. Both parents were awarded supervised visitation at the discretion of the Appellees.

**{¶48}** It is well established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. In contrast, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App.No. CA–5758.

**{¶49}** The discretion granted to the trial court in custody matters "should be accorded the utmost respect given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned." *In re Smith,* 1998 Ohio App. LEXIS 517 (Feb. 17, 1998), Brown App. No. CA97-04-011, unreported, citing *Miller v. Miller* (1998), 37 Ohio St. 3d 71, 74, 523 N.E.2d 846.

**{¶50}** Based on the foregoing, we find that the trial court's finding that granting legal custody to the foster parents was in the best interest of C.B-W. was supported by the evidence.

**{¶51}** The Second Assignment of Error is overruled.

**III.**

**{¶52}** In her Third Assignment of Error, Appellant-Mother argues that the trial court committed plain error in allowing the testimony of Candy Barr, a licensed social worker. We disagree.

**{¶53}** The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.

*Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624.

**{¶54}** Evid.R. 701 permits lay witnesses to express opinions that are 1) rationally based on the witness's perception and 2) helpful to the determination of facts that are at issue.

**{¶55}** However, the Rules of Evidence have limited applicability in most dispositional proceedings, see Evid.R. 101(C)(6) and Juv.R. 34(B)(2).[1] Pursuant to Juvenile Rule 34(B), the court has discretion to admit opinion evidence that it finds material and relevant.

**{¶56}** Upon review of the record, we find that Ms. Barr testified that she was a licensed social worker, who has worked in that capacity in the state of Ohio for 28 years. (T. II. at 59). She further testified that she coordinated a counseling program for foster parents and adoptive parents, for training, crisis intervention, placement, educational difficulties, and provide counseling directly to some children in the program. (T. II. at 60). She testified that she had 450 ongoing training hours, with 85% of that involving foster

---

[1] Evid.R. 101(C)(6):
(C) Exceptions.
These rules (other than with respect to privileges) do not apply in the following situations:
***
(6) Other rules.
Proceedings in which other rules prescribed by the Supreme Court govern matters relating to evidence.

Juv.R. 34(B)(2):
(B) Hearing procedure. The hearing shall be conducted in the following manner:
(1) ***
(2) Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence.

care trauma, attachment, things like that." (T. II. at 60). Ms. Barr also testified that she had been an independent consultant and trainer with Ohio Child Welfare Training Program out of the Institute for Human Services in Columbus, Ohio, for approximately 12 years. (T. II. at 60). She stated that she had a bachelor's degree in social work, and a master's degree in education, and that as part of licensing as a social worker she has ongoing training in trauma and attachment in the foster care system. (T. II. at 61). Further, she testified that she drafted curriculum for the Ohio Child Welfare program for the State of Ohio, which dealt with separation loss and placement of children in Children Services agencies. (T. II. at 62).

{¶57} Ms. Barr went on to testify that she had met with the minor child in this case in the home of the foster parents, and that she observed that the child made eye-contact with them, they mirrored her expressions, that the child sought out the foster parents and siblings in the house for affection, requested things, and that they were very responsive to her. (T. II. at 63). She further testified that in her opinion the child was bonded with the foster parents (T. II. at 64).

{¶58} When asked about the effects of moving a child out of a placement after 18 months, Ms. Barr testified that would be a difficult time to move children. (T. II. at 64). She went on to explain the difficulties of placing children at that age because of their limited language skills, and their dependence of their sensory world, and changing caregivers at that age can cause anxiety and frustration and emotional development can start over, because the new care giver hasn't established trust and attachment. (T. II. at 65-66). Upon objections regarding speculation by the witness, the trial court asked Ms. Barr if she had experience as a clinician and based upon that experience did she feel she could

answer the question - which pertained to the risks of moving a child after an extended placement. (T. II. at 67). The witness responded in the affirmative. The trial court then found that the hearing was a dispositional hearing and that the rules of evidence did not apply. The court also found that the witness had not been qualified as an expert but that he would permit her to give a lay opinion based upon her experience. The objection was overruled. (T. II. at 67).

{¶59}   Upon review, we find that the trial court did not accept the witness as an expert. Further, in its decision, the trial court made the following sole finding of fact as to Ms. Barr's testimony:

> Candy Barr, a social worker and independent consultant and trainer for Ohio Child Welfare Training Program for the Institute for Human Services in Columbus, Ohio, testified that based upon her observation she believed the child was bonded with the foster parents and that disrupting that bond at this point in time may place the child at a higher risk of future negative consequences and behaviors.

{¶60}   We find that such testimony was a lay opinion based on Ms. Barr's experience. We further find that based on her qualifications and experience, the trial court had the discretion to admit her testimony as material and relevant.

{¶61}   As to Appellant's argument that the witness should not have been permitted to read from Adverse Childhood Experience Study, we again find that Juvenile Rule 34 (B) provides the trial court with discretion to admit evidence that is material and relevant, including but not limited to hearsay, opinion and documentary evidence.

**{¶62}** Based on the foregoing, we do not find the trial court erred in allowing Ms. Barr's testimony at said hearing.

**{¶63}** The Third Assignment of Error is overruled.

**IV.**

**{¶64}** In her Fourth Assignment of Error, Appellant-Mother argues that she was denied the effective assistance of counsel.

**{¶65}** A parent has a fundamental liberty interest in the care, custody, and management of his or her child. *See In re Gower/Evans Children,* 5th Dist. Tuscarawas No. 06AP060034, 2006–Ohio–5676, 2006 WL 3071339, ¶ 28, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. In Ohio, the statutorily permissible dispositional alternatives in a dependency, neglect, or abuse case are enumerated in R.C. 2151.353(A). *See, e.g., In re S.Y.,* 5th Dist. Tuscarawas No. 2011AP040018, 2011–Ohio–4621, ¶ 31. In particular, R.C. 2151.353(A)(3) provides: "

> If a child is adjudicated an abused, neglected, or dependent child,
> the court may make any of the following orders of disposition: * * * Award
> legal custody of the child to either parent or to any other person who, prior
> to the dispositional hearing, files a motion requesting legal custody of the
> child or is identified as a proposed legal custodian in a complaint or motion
> filed prior to the dispositional hearing by any party to the proceedings. * * *.

**{¶66}** In comparison, the disposition of committing an abused, neglected, or dependent child to the permanent custody of a public children services agency or private child placing agency is addressed in R.C. 2151.353(A)(4). Thus, legal custody and

permanent custody in this context are alternative dispositional choices. *See In re Fell,* 5th Dist. Guernsey No. 2004–CA–39, 2005–Ohio–2415, ¶ 17.

**{¶67}** This Court has recognized "ineffective assistance" claims in permanent custody appeals. *See, e.g., In re Utt Children,* 5th Dist. Stark No. 2003CA00196, 2003–Ohio–4576. However, we have not expanded the doctrine of ineffective assistance of counsel beyond criminal cases and those involving permanent custody. *See In re Logwood,* 5th Dist. Guernsey No. 2004–CA–38, 2005–Ohio–3639, ¶ 26. The matter before us did not result in an order of permanent custody to ACDJFS. *See, also,* R.C. 2151.011(B)(32). We therefore will not further address Appellant's fourth Assignment of Error. Accord *In re W.A.,* 5th Dist. Muskingum No. CT2013–0002, 2013–Ohio–3444, ¶¶ 31–33; *In the matter of L.J.W.*, 5th Dist. Ashland No. 16 COA 13, 2016-Ohio-7054.

**{¶68}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Muskingum County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Baldwin, J., concur.


JWW/d 1113