[Cite as *In re S. Children*, 2018-Ohio-3559.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN RE: S. CHILDREN | : | JUDGES: |
| CARLA LYCAN | : | |
| | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| | : | Case Nos. 2018CA00040 |
| | : | 2018CA00041 |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case Nos. 2017JCV01408, 2017JCV01409

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: September 4, 2018

APPEARANCES:

For Objector-Appellant:

DONALD GALLICK
190 North Union St. #102
Akron, OH 44304

For Appellee:

BRANDON J. WALTENBAUGH
STARK COUNTY JFS
402 2nd St. SE
Canton, OH 44702

*Delaney, J.*

{¶1} Appellant Carla Lycan ("Aunt") appeals from the February 12, 2018 journal entries of the magistrate and April 3, 2018 judgment entries of the trial court of the Stark County Court of Common Pleas, Juvenile Division. Appellee is Stark County Jobs and Family Services (the "Agency").

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case involves legal custody of Jane Doe (D.O.B. 3-14-2003) and Mary Doe (D.O.B. 11-08-2004). Aunt is the legal guardian of the sisters and is married to Tim Lycan ("Uncle").

{¶3} This case arose when Jane Doe passed a note to another student at school stating she was being hurt at home. Jane was interviewed by a caseworker from the Agency, police officers, and a social worker at Akron Children's Hospital. Jane's account was consistent: she said Aunt yelled at her, pulled her hair, grabbed her by the throat, and hit her head against a refrigerator. Jane said her body "went fuzzy" during the incident and she saw black spots. Marks were observed on Jane's neck consistent with fingernail marks.

{¶4} Deputy Simek further investigated Jane's allegations. He too observed the scratch marks on her neck, a bump on her forehead, and minor redness and bruising on her neck. Simek spoke to Aunt, who denied the allegations, and to Uncle, who said he was not home when the incident occurred. Simek arrested Aunt for felonious assault and placed Jane and Mary Doe into the emergency custody of the Agency. By the time the instant case proceeded to the evidentiary hearing, the charges were amended to

misdemeanor domestic violence and child endangering but remained pending with a no-contact order.

{¶5}   On November 21, 2017, the Agency filed complaints alleging dependency, neglect, and/or abuse of Jane Doe and dependency of Mary Doe, and the girls were placed in the temporary custody of the Agency.  The trial court found probable cause existed for involvement of the Agency, that continued residence of the children in Aunt's home would be contrary to their best interest and welfare, and that the Agency made reasonable efforts to prevent the need for placement and/or to make it possible for the children to return home or to remain in the home.

{¶6}   Aunt requested evidence and the matter was set for trial on the initial complaints.

{¶7}   On January 31, 2018, the Guardian ad Litem of the children filed a report recommending that the children remain in foster placement.

{¶8}   Both sides presented evidence at a hearing commencing on February 7, 2018 and concluding on February 12, 2018.

{¶9}   Carrie Schnirring testified on behalf of the Agency as an expert witness. She performed separate trauma evaluations of Jane and Mary.  Both girls are developmentally disabled, and Schnirring testified there is no evidence suggesting children with developmental delays are less truthful than anyone else.  Jane told Schnirring that Aunt choked her and hit her head against the refrigerator.  She diagnosed Jane with an Adjustment Disorder with anxiety.  She determined Jane needed trauma therapy and Aunt was the primary cause of the trauma.  For treatment to be effective, therefore, Jane needed to be removed from the environment.

{¶10} Mary's developmental delays are more severe and her evaluation was more difficult. Mary was defensive and easily frustrated, and didn't understand why Schnirring asked the same questions repeatedly when Mary had already told her what happened.[1] Schnirring could not identify new trauma to Mary which had occurred since reunification with Aunt, but she also diagnosed Mary with an Adjustment Disorder with anxiety.

{¶11} In Schnirring's opinion, both Jane and Mary have experienced trauma due to Aunt's abuse and require trauma therapy. For such therapy to be effective, they must be removed from the environment so the sisters can resolve their anxiety. Returning the sisters to Aunt's home would be detrimental if significant progress was not made to ensure trauma would not recur.

{¶12} Dr. Thomas Pickton testified on behalf of Aunt. He met with the children twice prior to their removal, but in Aunt's presence. He opined that Jane Doe's developmental delays made her more likely to "embellish" stories because children with delays are "needy" and seek attention. He further testified, though, that he was unaware of the physical evidence corroborating the allegations and had not reviewed the records of Akron Children's Hospital.

{¶13} Uncle also testified on Aunt's behalf. He said he returned home on the date of the incident after a Cleveland Browns game and there were no signs of distress or

---

[1] The Agency has been involved with this family since May 2017, and the children were separated from Aunt and placed in foster care once prior to the events described in the instant appeal. Evidence about the prior history was limited at the hearing, and the magistrate restricted the evidence to the most recent issues, but the prior removal was in the background of testimony in the instant case because the witnesses were asked to describe events which occurred since reunification. For example, Mary became frustrated in attempting to distinguish which events occurred before reunification and which occurred after.

upset among the family. In his opinion, Jane either caused her own injuries, or had an accomplice at school who caused them.

{¶14} Aunt's adult son and daughter, cousins of Jane and Mary, also testified. They did not see any signs that the girls were distressed or had been disciplined.

{¶15} The magistrate found both Jane Doe and Mary Doe to be dependent children, but also found the evidence did not rise to the level of clear and convincing upon the allegations of abuse and neglect of Jane Doe.

{¶16} The matter proceeded to disposition. Both sides presented evidence regarding disposition and the Guardian ad Litem recommended that the children remain in foster care.

{¶17} The magistrate placed the children in the temporary custody of the Agency. The magistrate further found that there were compelling reasons to preclude a request for permanent custody, the children's continued residence in or return to the home would be contrary to their best interest and welfare, the Agency made reasonable efforts to prevent the need for placement and/or make it possible for the children to return home, and approved and adopted the initial case plan.

{¶18} The magistrate's decision regarding disposition stated in pertinent part:

> * * * *. There is currently a [no contact order] with both this court and the criminal court. The agency requested temporary custody of the children to allow for services to begin and for the children to begin counseling. * * * *.
>
> The Court finds that temporary custody to the agency would allow time to get services in place for the family.

* * * *.  Upon the resolution of Aunt's criminal case, and Aunt getting the parenting evaluation completed and initiation of services, the Court shall review (upon request of Aunt) the matter of placement of the children.

* * * *.

{¶19} Aunt objected to the magistrate's decision on February 21, 2018 and arguments were heard before the trial court on March 26, 2018.

{¶20} On April 3, 2018, the trial court approved and adopted the magistrate's decision, overruling Aunt's objections.

{¶21} Aunt now appeals from the decision of the trial court.

{¶22} Appellant raises three assignments of error:

**ASSIGNMENTS OF ERROR**

{¶23} "I.  THE TRIAL COURT ERRED IN ADOPTING A MAGISTRATE RULING BECAUSE THE JUDGMENT ENTRY WAS DEVOID OF ANY LEGAL ANALYSIS OR FACTUAL BASIS."

{¶24} "II.  THE TRIAL COURT ERRED IN ADOPTING A MAGISTRATE RULING THAT FAILED TO CONSIDER THE BEST INTERESTS OF THE CHILDREN."

{¶25} "III.  THE TRIAL COURT ERRED IN ADOPTING A MAGISTRATE RULING THAT DECLARED CHILDREN DEPENDENT SOLELY BECAUSE THEY ARE IN NEED OF COUNSELING."

**ANALYSIS**

I.

{¶26} In her first assignment of error, Aunt argues the magistrate's ruling "fails to reference and fails to consider any of the testimony of 10 witnesses who testified during the February 7 and February 12 hearings," a ruling which she further argues the trial court approved and adopted with insufficient analysis.  We disagree.

{¶27} First, we disagree with Aunt's characterization of the decisions of the magistrate and trial court.  Our review of the judgment entries indicates the magistrate cited the following relevant evidence in the decision dated February 16, 2018:

> * * * *.  Evidence showed that [Jane Doe] was consistent in her reports of being choked by Aunt.  Children had updated trauma evaluations which indicated Adjustment Disorder with Anxiety for both girls.  An examination from Akron Children's Hospital showed a "Small, semicircular mark on R side of neck, possibly from fingernail; 2 linear scratches on L side of neck…"  Testimony revealed that Aunt had begun to get psychological services/counseling for the girls, but only had 2 sessions in so far.  * * * *.
>
> Although [Jane Doe] had some evidence of small marks per the ACH report which are not inconsistent with the allegations of abuse, the Court does not find the level of proof to rise to "clear and convincing" as required by Juv.R. 29 & O.R.C. 2151.31 as to make a finding of abuse or neglect.  The children's evaluations indicate that the children have been diagnosed with Adjustment Disorder Anxiety

(*sic*) and that they are in need of services, so a finding of Dependency is made as to both children (per R.C. 2151.04(C) as to [Jane] and R.C. 2151.04(D) as to [Mary].  * * * *.

{¶28} And in the Judgment Entry of the trial court dated April 3, 2018, the trial court stated in pertinent part: "The Court, having made an independent analysis of the facts and the applicable law, hereby approves and adopts the Magistrate's Decision issued 2/16/18 and orders it entered as a matter of record.  * * * *.

{¶29} We find the magistrate's decisions comply with Juv.R. 40(D) and are not insufficient.  We note Aunt does not specify how the decisions are deficient, and her allegation that the magistrate overlooked the witness testimony is belied by the entries themselves.  The magistrate clearly weighed the testimony of Aunt's witnesses as well because the magistrate found in Aunt's favor as to the allegations of abuse and neglect against Jane Doe.  Juv.R. 40(D)(3)(a)(ii), Findings of Fact and Conclusions of Law, states:

> **Subject to the terms of the relevant reference, a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law**. A request for findings of fact and conclusions of law shall be made before the entry of a magistrate's decision or within seven days after the filing of a magistrate's decision. If a request for findings of fact and conclusions of law is timely made, the magistrate may require any or all of the parties to submit proposed findings of fact and conclusions of law.  (Emphasis added).

{¶30} As the Agency points out, the record is devoid of any request for findings of fact or conclusions of law. A trial court order entry that delineated basis of adjudication of dependency was not required, where neither party made such a request for findings and conclusions of law. *In re Ware*, 2nd Dist. Montgomery No. 19302, 2002-Ohio-4686, ¶ 9, opinion modified on reconsideration, 2nd Dist. Montgomery No. 193022002-Ohio-6086. We find, moreover, the magistrate's decision in the instant case sufficiently delineate the basis of the adjudication of dependency.

{¶31} As to the trial court's review of the magistrate's decision, Juv.R. 40(D)(4)(b) and (d) state:

> (b) Action on Magistrate's Decision. Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.
>
> * * * *.
>
> (d) Action on Objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable

diligence, have produced that evidence for consideration by the magistrate.

{¶32} Aunt has not cited any relevant authority supporting her argument that the entries here are insufficient. Her argument is premised upon the assumption that the decisions are insufficiently detailed to permit meaningful review, but such is not the case. Ohio appellate courts have recognized that in some situations, if a trial court's judgment entry is not "sufficiently detailed," the reviewing court is "left in the unfortunate position of being unable to provide meaningful review." *Schlauch v. Schlauch*, 5th Dist. Holmes No. 14 CA 008, 2015-Ohio-577, ¶ 27, citing *Stephens v. Stephens,* 9th Dist. Wayne No. 12CA0049, 2013–Ohio–2797, ¶ 5 (additional citations omitted). In those situations, an appellate court may reverse the judgment and remand the matter so the trial court can create an entry sufficient to permit appellate review. *Id.,* citing *MSRK, LLC v. Twinsburg,* 9th Dist. Summit No. 24949, 2012–Ohio–2608, ¶ 10.

{¶33} We have thoroughly reviewed the record, including the transcript of the evidentiary hearing and the resulting decisions of the magistrate and trial court, and find our review is not precluded by any deficiencies therein. We therefore find the entries to be sufficiently detailed, and the trial court did not err in approving and adopting the decisions of the magistrate.

{¶34} Aunt's first assignment of error is therefore overruled.

II., III

{¶35} Aunt's second and third assignments of error are related and will be considered together. In her second assignment of error, Aunt argues the trial court erred in adopting the magistrate's decision because the magistrate did not weigh the best

interests of the children. In her third assignment of error, Aunt contends the trial court erred in finding Jane and Mary Doe to be dependent children "solely" because they are in need of counseling. We disagree with Aunt's characterization of the record in both arguments.

{¶36} First, we note Aunt states in her brief that the magistrate "ignored" the best interests of the children, but as the Agency points out, the entry of February 12, 2018 contains the following finding of fact, "The children's continued residence in or return to the home would be contrary to the children's best interest and welfare."

{¶37} Aunt cites our decision in *Matter of C.B-W* for the proposition that the best interest of the children in the paramount consideration in matters of child custody. *Matter of C.B-W.*, 5th Dist. Muskingum No. CT2017-0025, 2017-Ohio-8901, ¶ 28. We find ample evidence in the record of the instant case that the trial court weighed the best interests of the sisters in placing them in the temporary custody of the Agency.

{¶38} Additionally, *Matter of C.B-W.* is instructive upon the deference we are to afford to the trial court's evaluation of the evidence and underscores our analysis of Aunt's summary arguments. It is well-established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *Matter of C.B-W.*, 5th Dist. Muskingum No. CT2017-0025, 2017-Ohio-8901, ¶ 48, citing *State v. Caldwell*, 79 Ohio App.3d 667, 679, 607 N.E.2d 1096 (4th Dist.1992). In contrast, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Id.*, 2017-Ohio-8901 at ¶ 49, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911 (February 10, 1982). The discretion

granted to the trial court in custody matters "should be accorded the utmost respect given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned." *Id.*, citing *Miller v. Miller*, 37 Ohio St. 3d 71, 74, 523 N.E.2d 846 (1998).

{¶39} Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. *Matter of C.B-W.*, supra, 2017-Ohio-8901 at ¶ 38, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997), and *Miller, supra,* 37 Ohio St.3d at 74. The Ohio Supreme Court has also explained: "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.*, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984). Furthermore, "[e]very reasonable presumption must be made in favor of the judgment and the findings [of the juvenile court]. * * * If the evidence is susceptible to more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, and most favorable to sustaining the [juvenile] court's verdict and judgment." *Id.,* citing *Karches v. Cincinnati*, 38 Ohio St.3d 12, 526 N.E.2d 1350 (1988).

{¶40} In the instant case, the trial court provided findings of fact and conclusions of law in support of its decision to grant the Agency's motion for temporary custody. Despite Aunt's contentions, it is apparent the magistrate took into account the testimony of all of the witnesses, including Aunt's. We note the magistrate cited the testimony of

female Cousin, Aunt's adult daughter, who was ruled out as a placement possibility for the sisters because she did not believe Jane Doe and she failed to comply with the no-contact order.

{¶41} Aunt's premise that the trial court's decisions are based solely upon "counseling" is incongruous with the record. Her arguments in her second and third assignments of error ignore the criminal case underlying the custody matter. At the time of the evidentiary hearing, no-contact orders were in place and Aunt still faced misdemeanor charges of domestic violence and child endangering.[2] Her arguments further ignore the history of her involvement with the Agency, the physical evidence of abuse of Jane Doe in the instant case, and the pending criminal charges against Aunt. The trial court took all of these elements into account, noting the issue of custody could be revisited when the criminal case was resolved and if the entire family undertook case plan services.

{¶42} Based on all of the testimony, the trial court ultimately decided that it was in the best interests of the children to continue in care and custody of the Agency.

{¶43} Based on the foregoing, we find the trial court did not err in awarding temporary custody to the Agency. Aunt's second and third assignments of error are overruled.

---

[2] The resolution of the criminal charges, if any, is not in the record before us.

**CONCLUSION**

{¶44} Aunt's three assignments of error are overruled and the judgment of the Stark County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Baldwin, J., concur.