**[Cite as *In re T.H.*, 2016-Ohio-7310.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. William B. Hoffman, P.J. |
| IN RE T.H., JR. | : | Hon. John W. Wise, J. |
|  | : | Hon. W. Scott Gwin, J. |
|  | : |  |
|  | : | Case No. CT2016-0008 |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
Court of Common Pleas, Juvenile
Division, Case No. 21330140

JUDGMENT:     AFFIRMED

DATE OF JUDGMENT ENTRY:     October 6, 2016

APPEARANCES:

For Mother-Appellant:

JOHN D. WEAVER
15 Price Ave., Suite 101
Columbus, OH 43201

For Father-Appellant

R. SCOTT PATTERSON
2609 Bell St.
Zanesville, OH 43701

For GAL-Appellee:

PETER N. CULTICE
58 North Fifth Street
Zanesville, OH 43701

For MCCS-Appellee:

D. MICHAEL HADDOX
MUSKINGUM COUNTY PROSECUTOR

GERALD V. ANDERSON II
27 North Fifth St., P.O. Box 189
Zanesville, OH 43702-0189

For Foster Parents-Appellees

SUSAN MCDONALD
320 Main St.
Zanesville, OH 43701

*Delaney, J.*

{¶1}  Father-Appellant appeals the July 10, 2015 judgment entry of the Muskingum County Court of Common Pleas, Juvenile Division to allow Foster Parents-Appellees to intervene in the proceedings.

**FACTS AND PROCEDURAL HISTORY**

{¶1}  Mother-Appellant and Father-Appellant are the parents of T.H., Jr. Mother and Father are not married.

{¶2}  T.H., Jr. was born on July 9, 2013. He had marijuana in his system and addicted to opiates when he was born. The hospital administered methadone for withdrawal. Mother admitted to smoking marijuana during her pregnancy as well as taking Oxycodone during the last three weeks of her pregnancy.

{¶3}  The hospital alerted Muskingum County Children Services ("MCCS") to the addicted status of the child. On July 15, 2013, MCCS filed a complaint alleging the child to be an abused, neglected, and dependent child. MCCS had previous involvement with Mother. Mother's three older children by a different father were removed from her care because of Mother's involvement with drugs and her failure to complete her case plan. The three children were placed in the legal custody of a relative.

{¶4}  A shelter care hearing was held on July 15, 2013 where T.H., Jr. was placed in the temporary custody of a kinship placement with protective supervision by MCCS. T.H., Jr. was placed with a certified foster family, Foster Parents-Appellees, on July 21, 2013.

{¶5}  MCCS developed a case plan for Mother and Father with reunification as the permanency plan. Both Mother and Father had a history of marijuana, cocaine, and

narcotic use. Mother's case plan included outpatient substance abuse counseling, random drug screen, mental health counseling, a psychological evaluation by Dr. Howard Beazel, parenting classes, a demonstrated ability to appropriately parent T.H., Jr., and attend all visits in order to facilitate bonding. Father's case plan included outpatient substance abuse counseling, random drug screens, mental health counseling, a psychological evaluation by Dr. Howard Beazel, parenting classes, and a demonstrated ability to appropriately parent his child.

{¶6}  An adjudicatory/dispositional hearing was held on October 7, 2013, wherein T.H., Jr. was found to be an abused, neglected, and dependent child. He was placed into the temporary custody of MCCS. MCCS filed an amended case plan reflecting the placement of T.H., Jr. into a certified foster home on July 19, 2013.

{¶7}  An annual review hearing was held on June 16, 2014. The trial court found MCCS had made reasonable efforts to prevent an out of home placement, as well as to reunify T.H., Jr. with Mother and Father. The psychological evaluations of Mother and Father by Dr. Howard Beazel were filed with the trial court on July 17, 2014. Based on his psychological evaluation, Dr. Beazel did not recommend returning the child to Mother or Father. The trial court conducted a review hearing finding reasonable efforts and noting the evaluations by Dr. Beazel. The trial court permitted an independent psychological evaluation of Father and Mother by Dr. Gary Wolfgang.

{¶8}  On January 14, 2015, the trial court held an annual review hearing. It found reasonable efforts and found Mother had made progress in her case plan, as reflected by negative drug screens. Mother completed her drug treatment and elected to remain in

treatment until she regained custody of T.H., Jr. The trial court approved MCCS's fist request for a six-month extension of its temporary custody.

{¶9} On June 15, 2015, Foster Parents filed a motion to be added as third parties. Father filed a motion for legal custody of T.H., Jr. on June 30, 2015. Foster Parents filed a motion for legal custody of T.H., Jr. on July 8, 2015.

{¶10} On July 10, 2015, following a review hearing and a hearing on the Foster Parents' motion to intervene, the trial court found reasonable efforts, granted the Foster Parents' motion to intervene, and ordered a hearing be set on the motion for legal custody.

{¶11} On September 22, 2015, the trial court held a 90-day review hearing that reiterated reunification as the permanency goal. MCCS began transitioning T.H., Jr. into Mother and Father's home with unsupervised parenting time during the day up to five days a week.

{¶12} The trial court held a hearing on the motions for legal custody on October 8 and 9, 2015. Dr. Wolfgang first testified as to his evaluations of Mother and Father. He stated that based on his evaluations of Mother in 2015 and Father in 2014, it was his opinion that MCCS should move forward with reunification. (T. 112, 155). Mother was clean and sober since July 2013. Dr. Wolfgang's evaluation of Mother did not suggest Mother had a depressive illness or a psychotic disorder. (T. 148). He suggested if MCCS moved forward with reunification, the process should be gradual. Dr. Wolfgang testified there was nothing in Father's evaluation that would make him believe that T.H., Jr. was in danger of abuse or neglect. (T. 112).

{¶13} Dr. Howard Beazel testified after Dr. Wolfgang. Dr. Beazel stated there was nothing in the testimony that changed his opinion as to Father's inability to parent T.H.,

Jr. (T. 216). Father has used marijuana since he was child. Father tested positive for marijuana on July 8, 2014, September 12, 2014, June 9, 2015, and July 14, 2015. (T. 114). Father has spent time in prison and county jail for convictions of aggravated burglary, breaking and entering, grand theft, grand theft auto, possession of marijuana, and traffic offenses. Father was not employed and was receiving SSI benefits based on a bipolar diagnosis. Father was not receiving treatment or taking medication for this psychiatric condition. Father had a degenerative disc disorder for which, at the time of trial, he had obtained a prescription for Vicodin. Mother has not been employed since 2006 and is financially dependent upon Father. (T. 206).

{¶14} Lori Moore, the intervention supervisor with MCCS, testified Mother completed her case plan. (T. 229). Father finished the majority of his case plan except for counseling with Six County Counseling. (T. 230). MCCS was currently transitioning T.H., Jr. with extended visits with Mother and Father at their home. (T. 233). Foster Parents went against the MCCS policy by intervening in the case. (T. 236). The case plan was filed on August 14, 2013 and Moore testified that at the time of the hearing, the case was over 22 months old. (T. 248). MCCS had not filed a motion for permanent custody because Mother and Father were making progress on their case plan and Dr. Wolfgang recommended a gradual transition. (T. 251, 253).

{¶15} Lisa Foley, MCCS Family Stability Worker, testified Mother's and Father's visitations with T.H., Jr. were appropriate. (T. 261). Mother and Father did not have transportation. They lived in an apartment in Zanesville, where T.H., Jr. had his own bedroom.

{¶16} The Guardian Ad Litem report recommended that legal custody be granted to Foster Parents. The GAL was concerned with Father's substance abuse issues. Mother was dependent on Father for financial and physical assistance.

{¶17} Foster Parents testified they filed the motion to intervene in the case because the case was over 22 months old and MCCS was not going to file a motion for permanent custody. (T. 377). Foster Parents felt T.H., Jr. needed permanency. (T. 377). Mother is the director of a day care and Father is employed at a local college. Foster Parents have another adopted child.

{¶18} The trial court issued its decision and order on January 7, 2016. It found it was in the best interests of T.H., Jr. that legal custody be granted to Foster Parents. Mother and Father were granted supervised visitation with T.H., Jr.

{¶19} Father now appeals the decision to allow the Foster Parents to intervene.

## ASSIGNMENT OF ERROR

{¶20} Father raises one Assignment of Error:

{¶21} "THE TRIAL COURT ABUSED ITS DISCRETION TO THE PREJUDICE OF APPELLANT BY GRANTING THE FOSTER PARENTS' MOTION TO INTERVENE AND MAKING THEM PARTIES TO THE PENDING ABUSE, NEGLECT AND DEPENDENCY ACTION."

## ANALYSIS

{¶22} Father argues the trial court abused its discretion when it allowed Foster Parents to intervene in the proceedings. We disagree.

{¶23} Civ.R. 24 governs intervention and states as follows:

(A) Intervention of right

Upon timely application anyone shall be permitted to intervene in an action:

(1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(B) Permissive intervention

Upon timely application anyone may be permitted to intervene in an action:

(1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

{¶24} Foster Parents sought permissive intervention pursuant to Civ.R. 24(B). We review a trial court's ruling on a motion to intervene pursuant to Civ.R. 24(B) for an abuse of discretion. *In re K.L.*, 5th Dist. Tuscarawas No. 2015 AP 040016, 2015-Ohio-4598, ¶ 13. In order to find an abuse of discretion, we must determine the trial court's decision

was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶25} Under Juv.R. 2(Y), a party is defined as:

a child who is the subject of a juvenile court proceeding, the child's spouse, if any, the child's parent or parents, or if the parent of a child is a child, the parent of that parent, in appropriate cases, the child's custodian, guardian, or guardian ad litem, the state, and any other person specifically designated by the court.

{¶26} Juv.R. 2(Y) and Civ.R. 24(B) give the trial court discretion to permit intervention under the appropriate circumstances. *In re R.W.,* 2015-Ohio-1031, 30 N.E.3d 254, ¶ 14 (8th Dist.). A foster parent has no automatic right to participate as a party in the adjudication of the rights of natural parents and their children. *Id.* at ¶ 17. Foster parents generally have limited rights with respect to the children placed in their care. *Id.* People who care for a dependent or neglected child are agents for the state, which is the child's permanent or temporary legal custodian. *Id.* citing *In re J.B.*, 8th Dist. Cuyahoga No. 96652, 2011-Ohio-4830, ¶ 10.

{¶27} Juv.R. 2(Y) gives the trial court wide discretion to determine the parties to a juvenile action, which includes naming foster parents as parties. *In re Zhang*, 135 Ohio App.3d 350, 355, 734 N.E.2d 379 (8th Dist.1999); *In re D.T.,* 10th Dist. Franklin No. 07AP-853, 2008-Ohio-2287, ¶ 13. The Eighth District Court of Appeals stated in *In re R.W.*:

The rule "affords a procedural device permitting a trial court to include individuals not specifically otherwise designated a party but whose presence is necessary to fully litigate an issue presented in the action." *In*

*re Franklin,* 88 Ohio App.3d 277, 280, 623 N.E.2d 720 (3d Dist.1993). Thus, "the court may protect and adjudicate all legitimate claims, protect all interests appearing, avoid multiple litigation and conserve judicial time in the orderly administration of justice." *Id.*

*In re R.W.*, 2015-Ohio-1031, 30 N.E.3d 254, ¶ 16 (8th Dist.)

{¶28} In order to decide a motion to intervene in a juvenile proceeding, the trial court must look to whether intervention is in the best interests of the child. *In re R.W.,* 2015-Ohio-1031, ¶ 16 citing *In re B.O.,* 11th Dist. Lake No. 2011-L-055, 2011-Ohio-6210, ¶ 40-41.

{¶29} Foster Parents argued they stood in loco parentis for T.H., Jr. for nearly two years before they filed their motion to intervene. The Ohio Supreme Court explained the term "in loco parentis" as meaning "charged, factitiously, with a parent's rights, duties, and responsibilities." *State v. Noggle*, 67 Ohio St.3d 31, 33, 1993-Ohio-189, 615 N.E.2d 1040 citing Black's Law Dictionary (6 Ed.1990) 787. A person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding. *Id.* A "person in loco parentis" was grouped with guardians and custodians in the statute because they all have similar responsibilities. *Id.*

{¶30} The evidence in this case demonstrates that Foster Parents assumed the dominant parental role for T.H., Jr. since T.H., Jr's birth and T.H., Jr. relied upon Foster Parents for support. All parties agreed that when it came to caring for T.H., Jr., Foster Parents cooperated with Mother and Father while the parents worked on their case plans. Foster Parents, however, exercised significant parental control over T.H., Jr. It wasn't until

T.H., Jr. was two years old that MCCS began the process of transitioning T.H., Jr. into Mother and Father's home.

{¶31} Foster Parents testified they moved to intervene and filed a motion for legal custody because they felt T.H., Jr. needed permanency and deserved stability. (T. 377). They were told that MCCS was not going to file a motion for permanent custody when T.H., Jr., was two-years old. (T. 377).

{¶32} Based on this record, we find no abuse of discretion by the trial court to grant the motion of the Foster Parents' to intervene in the proceedings. Intervention was in the best interests of T.H., Jr. For over two years, Foster Parents had assumed the dominant parental role for T.H., Jr. and the evidence demonstrated they were working with T.H., Jr.'s best interests in mind.

{¶33} Father's sole Assignment of Error is overruled.

## CONCLUSION

{¶34} The judgment of the Muskingum County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.