[Cite as *In re L.M.*, 2021-Ohio-1630.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY


IN RE:                          :

     L.M., et al.             :      CASE NOS. CA2020-12-017
                                               CA2020-12-018

                                   :

                                   :      O P I N I O N
                                      5/10/2021

                                   :

                                   :


APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 20193112 18798; 20204059 18890


Rebecca Barthelemy-Smith, 7821 North Dixie Drive, Dayton, Ohio 45414, for appellant

Martin P. Votel, Preble County Prosecuting Attorney, Sean Brinkman, 101 East Main Street, Eaton, Ohio 45320, for appellee, Preble County Job and Family Services Division

Mother, pro se

Father, pro se

Jacob Kovach, 115 West Main Street, Eaton, Ohio 45320, guardian ad litem


**S. POWELL, J.**

{¶ 1} Appellant, the maternal grandmother of Li.M. and La.M. ("Grandmother"), appeals the decision of the Preble County Court of Common Pleas, Juvenile Division,

denying her motions to intervene in the proceedings involving Li.M. and La.M., initiated by appellee, Preble County Children Services ("PCCS"), after the children were separately removed from the care of their mother ("Mother") and father ("Father"). For the reasons outlined below, we affirm the juvenile court's decision.[1]

**Facts and Procedural History**

{¶ 2} Grandmother is the maternal grandmother of Li.M., born May 16, 2019, and La.M., born April 22, 2020. Neither Mother nor Father is a party to this appeal.

{¶ 3} On November 20, 2019, PCCS obtained emergency custody of Li.M. after the child was found by law enforcement officers in her Mother's and Father's care during the execution of a drug-related search warrant. The next day, November 21, 2019, PCCS filed a complaint alleging Li.M. was a dependent child. PCCS also requested the juvenile court grant it temporary custody of Li.M.

{¶ 4} On December 10, 2019, the juvenile court adjudicated Li.M. a dependent child. The juvenile court also granted PCCS' request for temporary custody of Li.M.

{¶ 5} On January 8, 2020, Grandmother moved to intervene in the temporary custody proceedings regarding Li.M. Grandmother also moved for legal custody of Li.M. Grandmother's motion to intervene, however, was not accompanied by the necessary pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention was sought as required by Civ.R. 24(C).

{¶ 6} On April 23, 2020, PCCS obtained emergency custody of La.M. after the child was born testing positive for illegal substances. Shortly thereafter, on April 29, 2020, PCCS filed a complaint alleging La.M. was an abused and dependent child. Just as it had done

---

1. Pursuant to Loc.R. 6(A), we have sua sponte removed this case from the accelerated calendar for the purposes of issuing this opinion.

in its complaint regarding Li.M., PCCS also requested the juvenile court grant it temporary custody of La.M.

{¶ 7} On May 7, 2020, Grandmother moved to intervene in the temporary custody proceedings regarding La.M. Grandmother also moved for legal custody of La.M. Just as before, Grandmother's motion to intervene was not accompanied by the necessary pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention was sought as required by Civ.R. 24(C).

{¶ 8} On August 13, 2020, the juvenile court adjudicated La.M. an abused and dependent child. The juvenile court also granted PCCS' request for temporary custody of La.M.

**Hearing on Grandmother's Motions to Intervene**

{¶ 9} On September 14, 2019, the juvenile court held a hearing on both of Grandmother's motions to intervene. During this hearing, the juvenile court heard testimony from Grandmother and from Leah Johnson, an intake investigator with PCCS. Neither Mother nor Father appeared at this hearing.

{¶ 10} Regarding La.M., Grandmother testified that she had never taken care of, been in the same room with, or even seen anything other than photographs of La.M. following her birth on April 22, 2020. However, as it relates to Li.M., Grandmother testified that she had provided financial support, clothing, diapers, and "sometimes" formula for Li.M during the six months that Mother, Father, and Li.M. lived with her after Li.M.'s birth on May 16, 2019. But, even then, Grandmother testified that she only provided this assistance when Mother had extinguished the benefits she received from the Ohio Department of Health's special supplemental nutritional program for women, infants, and children ("WIC").

{¶ 11} Grandmother also testified that she had only taken care of Li.M. when Mother

"would take off and leave [her] with the baby" and "wouldn't come home for like two days." Grandmother later testified that Mother would actually leave Li.M. with her for "like three days and then sometimes there was four days," something that Grandmother claimed Mother did "[a]t least every week" for a period of approximately six months. Thereafter, when asked if Mother was primary caregiver for Li.M., Grandmother testified that Mother was "supposed to be," but that she "helped" Mother, "you know take care of [Li.M.] too." This included, for instance, Grandmother once taking Li.M. to the doctor because Mother and Mother's "boyfriend" were "fighting at the time."[2]

{¶ 12} Johnson then testified. Johnson, who, as noted above, was an intake investigator with PCCS, testified that she spoke with Grandmother as part of her inspection of Grandmother's home for "possible kinship placement." During this time, Johnson testified that Grandmother told her that she "did help [Mother] with care for [Li.M.]. But not as the primary care giver." Johnson also testified that Grandmother told her that she was just "helping [Mother] out" with Li.M. Johnson further testified that while speaking to Mother that it was her, and not Grandmother, who was the primary caregiver for Li.M.

### Juvenile Court's Decision Denying Grandmother's Motions

{¶ 13} On November 14, 2020, the juvenile court issued a decision denying Grandmother's two motions to intervene. In so holding, the juvenile court initially stated:

> Here, [Grandmother] asserted no "right" to custody of, or
> visitation with, her granddaughters. She certainly has a "desire"
> for such, but she never obtained, through statute, court order,
> or other means, any legal right to custody or visitation. Her
> concern for her granddaughters cannot be construed as a legal
> interest that falls within the scope of Civ.R. 24. Certainly both
> O.R.C. Chapter 2151 and the civil and juvenile rules should be
> liberally construed to protect the interests of all concerned
> parties, but the caselaw on this issue emphasizes that unless a

---

2. From the record, and taking Grandmother's testimony as a whole, it is unclear if Mother's "boyfriend" and Father are the same person.

child's extended family in some manner has filled the role of parent, the law does not require that extended family members be made parties to custody proceedings. The Court thus needs to look as to whether [Grandmother] ever stood *in loco parentis* to [Li.M.] and/or [La.M.]. Did [Grandmother] ever exercise significant parental control over, or assume any parental duties for the benefit of her granddaughters?

(Emphasis sic.)

{¶ 14} Answering that question in the negative, the juvenile court stated:

The testimony does not indicate that [Grandmother] ever stood *in loco parentis* or that she exercised significant parental control over or assumed parental duties for the benefit of [Li.M.] or [La.M.]. The Court understands [Grandmother's] concern for her granddaughters [but] rejecting her motion to intervene does not mean that she will have no role in their lives. Here, though, [Grandmother] has not met her burden of proving a legal right to intervention or that a permissive right of intervention should be granted. As such, [Grandmother's] Motion to Intervene is denied.

(Emphasis sic.)

**Appeal and Grandmother's Single Assignment of Error**

{¶ 15} Grandmother now appeals, raising one assignment of error for review challenging the juvenile court's decision denying both of her motions to intervene. Specifically, Grandmother's single assignment of error states:

THE LOWER COURT ABUSED IT'S (sic) DISCRETION IN REFUSING TO GRANT [GRANDMOTHER'S] MOTION TO INTERVENE IN BOTH CASES INVOLVING THE MINOR CHILDREN.

**Rule of Law: Civ.R. 24(A), (B), and (C)**

{¶ 16} This appeal involves the juvenile court's application of Civ.R. 24(A), (B), and (C) to the case at bar. "Civ.R. 24 authorizes interested parties to intervene in an action as a matter of right or permissively under certain circumstances." *Clark v. Malicote*, 12th Dist. Clermont No. CA2010-07-049, 2011-Ohio-1874, ¶ 18. The rule regarding intervention of

right is set forth in Civ.R. 24(A) and states:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 17} Based on the plain language found in Civ.R. 24(A), intervention of right requires the intervenor to satisfy four elements: (1) "the intervenor must claim an interest relating to the property or transaction that is the subject of action;" (2) "the intervenor must be so situated that the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect his or her interest;" (3) "the intervenor must demonstrate that his or her interest is not adequately represented by the existing parties;" and (4) "the motion to intervene must be timely." *Classic Props., Inc. v. Bd. of Trustees of Goshen Twp.*, 12th Dist. Clermont No. CA2001-05-051, 2002-Ohio-287, citing *Peterman v. Pataskala*, 122 Ohio App.3d 758, 760-761 (5th Dist.1997). "Failure of the party seeking to intervene to satisfy each requirement of Civ.R. 24(A) * * * will result in denial of the right to intervene." *Liberty Twp. v. Woodland View*, 12th Dist. Butler No. CA2001-02-038, 2001 Ohio App. LEXIS 3641, *4 (Aug. 20, 2001), citing *Fairview Gen. Hosp. v. Fletcher*, 69 Ohio App.3d 827, 831 (10th Dist.1990).

{¶ 18} Unlike intervention of right under Civ.R. 24(A), the rule regarding permissive intervention is set forth in Civ.R. 24(B), which states:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal

- 6 -

or state governmental officer or agency or upon any regulation, order, requirement or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

{¶ 19} However, "[r]egardless of whether the party desiring intervention argues for intervention as of right under Civ.R. 24(A) or permissive intervention under Civ.R. 24(B), Civ.R. 24(C) sets forth the procedure for filing a motion to intervene." *In re B.L.*, 3d Dist. Allen Nos. 1-15-65 thru 1-15-68, 2016-Ohio-2982, ¶ 15. Pursuant to that rule:

A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Civ.R. 5. The motion and any supporting memorandum shall state the grounds for intervention and shall be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which intervention is sought. The same procedure shall be followed when a statute of this state gives a right to intervene.

{¶ 20} As defined by Civ.R. 7(A):

There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Civ.R. 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

**Standard of Review**

{¶ 21} "Civ.R. 24 is construed liberally in favor of granting intervention." *Wells Fargo Bank N.A. v. Brooks*, 7th Dist. Columbiana No. 15 CO 0010, 2016-Ohio-8561, ¶ 14, citing *State ex rel. Merrill v. Ohio Dept. of Natural Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, ¶ 41. This holds true even for permissive intervention under Civ.R. 24(B). *Ohio Community School Consultants, Ltd. v. Lincoln Preparatory Academy*, 10th Dist. Franklin No. 19AP-301, 2020-Ohio-890, ¶ 28 ("[e]ven for permissive intervention under Civ.R. 24[B],

the rule is to be construed liberally in favor of granting intervention"). But, even though the rule is to be liberally construed, a motion to intervene is not automatically granted simply because a request to intervene has been made. *See Cincinnati Assn. of Indep. Taxicab Owners, Inc. v. Turner*, 1st Dist. Hamilton No. C-75411, 1976 Ohio App. LEXIS 5970, *3 (July 26, 1976) (intervention of right is not "automatic simply upon the filing of an application containing averments corresponding to the requirements listed" in Civ.R. 24[A]).

{¶ 22} Rather, "[t]he decision to grant or deny a motion to intervene under either rule is a matter within the sound discretion of the trial court and the decision cannot be reversed on appeal absent an abuse of discretion." *Woodland View*, 2001 Ohio App. LEXIS 3641 at *3, citing *Clarke v. Warren Cty. Bd. of Commrs.*, 12th Dist. Warren No. CA2000-01-009, 2000 Ohio App. LEXIS 4199, *3 (Sept. 18, 2000); *State v. Thomas*, 6th Dist. Lucas No. L-19-1108, 2021-Ohio-151, ¶ 12 ("[a]ppellate review of a trial court's decision on a motion to intervene is for an abuse of discretion, regardless of whether the Civ.R. 24 intervention sought was as of right or by permission"). "An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary." *Adkins v. Boetcher*, 4th Dist. Ross No. 08CA3060, 2010-Ohio-554, ¶ 25. A decision is unreasonable where it is not supported by a sound reasoning process. *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46.

**Analysis: Grandmother Did Not Comply with Civ.R. 24(C)**

{¶ 23} As noted above, Civ.R. 24(C) requires a motion to intervene brought pursuant to either Civ.R. 24(A) or Civ.R. 24(B) be accompanied by a pleading, as defined in Civ.R. 7(A), setting forth the claim or defense for which the intervention is sought. In this case, however, it is clear that neither of Grandmother's motions to intervene were accompanied

by the necessary pleadings as required by Civ.R. 24(C). Grandmother's motions were instead, just that, motions consisting of a few short sentences underlying the reasons why Grandmother believes Li.M. and La.M. should be placed in her care. These reasons, although noteworthy, do not satisfy the procedural requirements under Civ.R. 24(C) for filing a motion to intervene.

{¶ 24} The failure to comply with Civ.R. 24(C), standing alone, "is grounds for denying a motion to intervene." *In re Adoption of K.*, 6th Dist. Wood No. WD-18-018, 2018-Ohio-3082, ¶ 9-10, citing *In re Estate of Williams*, 6th Dist. Sandusky No. S-14-018, 2015-Ohio-4781, ¶ 16. Motions to intervene are, in fact, "regularly denied" based solely on the intervenor's "failure to attach a pleading as required by Civ.R. 24(C)." *Yemma v. Reed*, 7th Dist. Mahoning No. 16 MA 0015, 2017-Ohio-1015, ¶ 46. This includes in cases decided by the Ohio Supreme Court. *See State ex rel. Sawicki v. Court of Common Pleas of Lucas Cty.*, 121 Ohio St.3d 507, 2009-Ohio-1523, ¶ 21 (affirming court of appeals' decision to deny a motion to intervene where the proposed intervenor "did not file any pleading with its motion" as required by Civ.R. 24[C] even though "the court of appeals did not rely on this ground in its decision denying [the intervenor's] motion to intervene"); *State ex rel. Wilkinson v. Reed*, 99 Ohio St.3d 106, 2003-Ohio-2506, ¶ 12, fn.1 (denying motion to intervene where proposed intervenors failed to comply with Civ.R. 24[C]).

{¶ 25} "[A] party's failure to file a pleading in compliance with Civ.R. 24(C) is fatal to a motion to intervene." *Sutton v. Sutton*, 9th Dist. Summit No. 28393, 2017-Ohio-5559, ¶ 8. Therefore, because Grandmother failed to comply with Civ.R. 24(C) when filing either of her two motions to intervene, it would have been proper for the juvenile court to deny Grandmother's motions on that basis alone. *See, e.g., Waynesburg Holdings, LLC v. Wells Fargo Bank, N.A.*, 5th Dist. Stark No. 2019CA00015, 2019-Ohio-4764, ¶ 45 ("the trial court

- 9 -

properly denied appellants' motion [to intervene] for failure to comply with Civil Rule 24[C] on that basis alone"), citing *Avanti Corp. v. Morelli Realty Corp.*, 5th Dist. Stark No. 2005CA00147, 2005-Ohio-6698, ¶ 17.   Accordingly, since neither of Grandmother's two motions to intervene were accompanied by the necessary pleading as required by Civ.R. 24(C), the juvenile court's decision denying Grandmother's two motions was not an abuse of discretion, as the juvenile court's decision was supported by a sound reasoning process. *See, e.g., Schaffer v. Jones*, 1st Dist. Hamilton No. C-160684, 2017-Ohio-7730, ¶ 21 ("[s]ince the proposed intervenors' motion to intervene was not accompanied by a pleading as described in Civ.R. 7[A], the trial court's denial of their motion was not an abuse of discretion, as the denial was supported by a sound reasoning process").

### Analysis: Grandmother Failed to Satisfy Either Civ.R. 24(A) or (B)

{¶ 26} Even assuming Grandmother's two motions to intervene were accompanied by the necessary pleadings as required by Civ.R. 24(C), which they were not, the juvenile court still did not abuse its discretion by denying Grandmother's motions on their merits.

*Grandmother Did Not Meet Her Burden Under Civ.R. 24(A)*

{¶ 27} Grandmother did not indicate in either of her two motions whether she sought to intervene pursuant to Civ.R. 24(A) or (B), nor did Grandmother make a clear indication at the hearing on her motions whether she was seeking an intervention of right or a permissive intervention.   The same is true as it relates to her appellate brief submitted to this court.   Grandmother, however, does state in her brief that Li.M. and La.M. "should be placed together with biological family," presumably making the case that the children should be placed with her rather than in foster care.   This implies, at least to this court, that Grandmother believes the juvenile court erred by denying her motions to intervene since she is entitled to intervention of right under Civ.R. 24(A) due to the simple fact that she is

Li.M.'s and La.M.'s grandmother. We disagree.

{¶ 28} Despite Grandmother's claims, it is well-established that neither a grandparent's desire for custody or visitation of a grandchild nor a grandparent's concern for the welfare of a grandchild can be construed "as a legal interest that falls within the scope of Civ.R. 24(A)." *In re Schmidt*, 25 Ohio St.3d 331, 336 (1986). This is because "[t]he law does not provide grandparents with inherent legal rights based simply on the family relationship." *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 9, citing *In re Whitaker*, 36 Ohio St.3d 213, 215 (1988). Therefore, just as the juvenile court found, while Grandmother certainly has a "desire" to obtain custody of her grandchildren, Grandmother "asserted no 'right' to custody of, or visitation with her granddaughters," given that Grandmother "never obtained, through statute, court order, or other means, any legal right to custody or visitation" with either child. We find no error in the juvenile court's decision. *See, e.g., In re K.K.E.*, 5th Dist. Tuscarawas No. 2020 AP 08 0016, 2020-Ohio-6723, ¶ 12-14 (juvenile court did not err by denying a Civ.R. 24[A] motion to intervene filed by paternal aunt and uncle where the aunt and uncle never obtained, prior to their motion to intervene, through statute, court order, or other means, any legal right to custody or visitation with the child). Accordingly, given the facts of this case, the juvenile court did not err by denying Grandmother's motions to intervene of right under Civ.R. 24(A).

*Grandmother Did Not Meet Her Burden Under Civ.R. 24(B)*

{¶ 29} Grandmother makes a more explicit argument as it relates to permissive intervention under Civ.R. 24(B). Specifically, Grandmother argues the juvenile court erred by denying her motions to intervene since this is a "clear case" of a grandparent being in loco parentis with her two grandchildren, Li.M. and La.M. This, according to Grandmother, indicates the juvenile court erred by denying her motions for permissive intervention under

- 11 -

Civ.R. 24(B). We again disagree.

{¶ 30} A juvenile court may be found to have abused its discretion in denying a motion to intervene under Civ.R. 24(B) where "the person attempting to intervene in some manner filled the role of the parents." *In re K.K.E.*, 2020-Ohio-6723 at ¶ 17, citing *In re T.H.*, 5th Dist. Muskingum No. CT2016-0008, 2016-Ohio-7310. This is more commonly known as in loco parentis. *See Glancy v. Spradley*, 12th Dist. Butler No. CA2012-02-024, 2012-Ohio-4224, ¶ 11; *see also In re A.T.*, 3d Dist. Crawford Nos. 3-19-07 thru 3-19-09, 2019-Ohio-5038, ¶ 15 (noting that "[a] number of appellate districts have, in various cases, held that a trial court abuses its discretion by denying a motion for intervention where the grandparents have stood in loco parentis to their grandchild"). "According to the Ohio Supreme Court, 'the term in loco parentis means charged, factitiously, with a parent's rights, duties, and responsibilities.'" (Internal quotation marks deleted). *McLoughlin v. Williams*, 12th Dist. Clermont No. CA2015-02-020, 2015-Ohio-3287, ¶ 9, quoting *State v. Noggle*, 67 Ohio St.3d 31, 33 (1993). "In loco parentis 'exists when [a] person undertakes care and control of another in absence of such supervision by [the] latter's natural parents and in absence of formal legal approval * * *.'" *In re N.M.*, 8th Dist. Cuyahoga No. 104498, 2016-Ohio-7967, ¶ 15, quoting Black's Law Dictionary 787 (6th Ed.1990).

{¶ 31} Applying these principles to the case at bar, Grandmother testified that she had never taken care of, been in the same room with, or even seen anything other than photographs of La.M. following her birth. Grandmother, therefore, clearly never stood in loco parentis with La.M.

{¶ 32} We find the same to be true as it relates to Li.M. This is because, as the record indicates, Grandmother never exercised significant parental control over, or assumed parental duties for the benefit of, Li.M. prior to Li.M.'s removal from Mother's and

Father's care. Grandmother instead merely assisted Mother with the care of Li.M. as needed or, presumably, as requested. This includes times when Mother would leave Li.M. in Grandmother's care for a period of two to four days, as well as times when Grandmother provided financial support, clothing, diapers, and "sometimes" formula to Mother after Mother extinguished the benefits she received from WIC. Grandmother, in fact, specifically testified that while Mother was "supposed to be" Li.M.'s primary caretaker, she would nevertheless help Mother by taking care of Li.M., too. This includes one instance where Grandmother took Li.M. to the doctor because Mother and Mother's "boyfriend" were "fighting at the time." This does not constitute in loco parentis. *See In re J.B.*, 8th Dist. Cuyahoga No. 103521, 2016-Ohio-5513, ¶ 49 (no error to deny motion to intervene where there was no evidence that appellee "exercised significant control over or assumed parental duties for the benefit of the children" even though it was "uncontested" that appellee "loves the children").

{¶ 33} In light of the foregoing, although we do not discount the relationship that Grandmother hopes to develop with her grandchildren, the juvenile court did not err by denying Grandmother's motions to intervene in either case. In so holding, we note that, just like the juvenile court before us, this does not mean that Grandmother will have no role in either of her grandchildren's lives. Grandmother could, for instance, move for visitation with the children, or, as Grandmother has already done in this case, move for legal custody of the children. *See* R.C. 3109.12 (permitting grandparents and other relatives of a child born to an unwed woman to seek visitation with the child);[3] and R.C. 2151.353(A)(3) (permitting the juvenile court to grant legal custody of a child who has been adjudicated an abused,

---

3. The record in this case is sparse. However, after a thorough review of the record, it appears that both Li.M. and La.M. were children born to an unwed woman, in this case, Mother.

- 13 -

neglected, or dependent child to a grandparent "who, prior to the dispositional hearing, files a motion requesting legal custody of the child"). Grandmother need not intervene in the case before either request may be made and/or granted by the juvenile court. Therefore, finding no merit to any of the arguments raised by Grandmother herein, Grandmother's single assignment of error lacks merit and is overruled.

{¶ 34} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.